Pearson, J.,
Dissent. The doctrine of the English cases is, that a married woman, in regard to property secured for her separate use and maintenance, is, in all respects, *121 to be considered as a. feme sole, and has the absolute right of disposition by sale or will.
A different doctrine is established in almost all of the States of the Union ; and it is held, that, in regard to her separate estate, the wife is considered as a feme covert, subject to all of the common law disabilities, except so far as she can derive a power under the settlement, by its express provisions, and except so far as the’^right to receive and apply the profits for her maintenance. See White’s leading cases in Equity, and the cases there cited, in note, page 370-73.
I consider the question open in this State; for, although the English doctrine has been incidentally alluded to with approbation in several cases, it was not necessary to adopt the doctrine of implied powers, inasmuch as, in those cases, an express power was given. Whenever it is unnecessary to decide a point, the decision ought not to be taken as an authority, for this plain reason, there is no occasion to contest it, and it is, therefore, not “turned over and over” and looked at in every point of view, as it would be, if the case turned on it. Hence, I object to any modification of our law, or to the adoption or building up of any doctrine, by force of obiter opinions, no matter how often they may be repeated.
The case of Frazier v. Brownlow, 3 Ire. Eq. 237, is nearer being an authority than any othér; but there the Court goes further than the facts of the case called for, and it is an authority only to this extent, if the profits of land be secured for the separate use and maintenance of a married woman, she may, with the assent of her hus* band, charge such profits for a debt, admitted to be for articles furnished for the maintenance of herself and family.
The negroes in that case were held by the trustee in the room and stead of the profits of the land, which he had invested in negroes ; and he held them precisely as *122 he would have held the accumulated profits of the land, had he put the money in his desk, or made a deposit of it in Bank, so that the feme might use it as her necessities required.
So, in this case, as the feme had only a separate use for life in a negro woman, who was having children and wa.s, therefore, of no annual profit, and as, for her maintenance, she had a right to dispose of the profits, and a life estate is only in fact a right to the profits, I should have been willing to put this case upon the ground, that, in disposing of her life estate, she disposed of the profits only.
But the general doctrine was much discussed in this case and in the case of Whitfield v. Hurst, and my brother Judges have concluded to announce the English doctrine, in all of its generality as to implied powers, in relation to the separate estates of married women, and I feel constrained to dissent.
I adopt the American, in preference to the English, doctrine, upon these grounds: It is more consistent with the “reason of the thingIt makes a less departure from the ordinary principles of law : and it is more suitable to the habits and customs of the people of our State.
First: “The reason of the thing.” The common law considered the wife as merged in the husband, so as to be in law but one person. The evil is, that husbands, thus acquiring the ownership and right of disposition, may he improvident, and, by voluntary alienation, or debt, dispose of all the property and leave wives desti tute and without maintenance. The remedy is, to set apart a fund for the separate use and maintenance of the wife; which fund the husband cannot seller make liable for his debts. The evil is remedied by disabling the husband ; and as a remedy for the evil, there is no sort of necessity to go further and enable the wife, by taking away her legal disability and setting her up as a *123 feme sole, with power to act and deal independent of her husband, to be a free trader or to deal in goods, wares and merchandise.
Wives are as apt to be improvident as husbands ; and it is against “the reason of the thing” to disable the husband and enable the wife, by implication, to become a free trader, as a feme sole. One evil is avoided by falling into another. To remedy this second evil, a learned Chancellor of England suggested, that there ought to be in the settlement a restraint against alienation or anticipation on the part of the wife. Thus, a power is created bjr implication, which it is necessary to restrain by an express provision; in other words, there is a “wheel within a wheel,” and the machinery is made so complicated, that no two Chancellors ever make.it work in the same way.
Secondly : It makes a less departure from the ordinary principle of law. While it admits, that the protection of married women makes it necessary to depart from the rules of the common law, so as to allow property to be vested in a trustee for the separate use and maintenance of the wife, and thereby give her the use of the profits, and to disable the husband from all right to control or dispose of such property, it is careful not to make a greater departure than the necessity of the case calls for, and it only allows the wife to dispose of the property, when she has an express powmr to do so by will or otherwise.
On the contrary, the English doctrine makes an entire departure, and, in regard to her separate estate, the wife, in equity, is to all intents and purposes a single woman and a fxee trader, with implied powers to make a disposition by sale or will, as if she was not married.
When a husband agrees to give up his right of disposition in reference to certain property, and devotes it to the separate use and maintenance of his wife, so as to put it beyond any contingency, as regards his own acts., how *124 does it follow, that, because he is disabled, his wife be* comes enabled to dispose of the property ?
It is said, the right of disposition is an incident of ownership. That is true ; unless the owner is under a legal disability. Admit that the wife is the owner: She is not capable of disposing, because she is under disability ; and the remedy for the evil, as above suggested, is to disable the husband, and not to remove the disability of the wife.
But is it true, that the wife does become the owner ? — ■ There is no necessity for it, because the evil is remedied by allowing the property to be held for the purpose of her maintenance, and to be the property of the husband, subject to this trust. If it be the intention, that it should not only be subject to this trust, for the maintenance of the wife, but that she should have the right to dispose of it by will or deed, let the husband give his consent by an express power in the settlement. This would be but a slight departure from the common law, which allows a wife to dispose of her personal property by will, provided the husband gives his consent. In the absence of an express power, I am at a loss to conceive any ground for implying a power, which is not necessary to carry out the purpose of the settlement, to wit, “the maintenance of the wife.” I here repeat what is said before. A wife maybe improvident as well as a husband ; and the rule, by which she acquires by implication a right to charge and sell and dispose of the property, makes it necessaty, in order to protect her from her own improvidence, and from the influence of her husband, to insert a clause restraining her from alienation or anticipation ; thus making it necessary to violate one rule of the common law, in order to get relief from an implication, which violates another rule of the common law; thus making a complicated system of implied powers and restraints, wholly at variance with the common law.
*125 Thirdly: It is more stated to the habits and customs of the people of our State.
We have happily refused to adopt the English doctrine of “a part performance of a parol contract,” and the doctrine of “alien” by a vendor, who had executed a deed, for the purchase money, and the doctrine of “a wife’s equity for a settlement,” “because it is not the policy of our law to encourage separate estates,” and the doctrine, that purchasers from trustees are bound to see to the application of the purchase money. Having rid ourselves of these four refined, complicated, and artificial doctrines of the English system of equity, I was in hopes, that we had also got rid of the doctrine of implied powers, in regard to the separate estates of married women; which involves the idea of a married woman being, to all intents and purposes, a feme sole, in regard to her'Separate property— an idea, which, according to the principles of law that I have imbibed, lam unable to comprehend, apart from an express power of appointment.
It is believed, that the effect of the doctrine in England, by which property is not only set apart, as a fund for the maintenance of the wife, free from the control of the husband, but the wife, in regard to the fund, is made a. free trader and is looked upon as a feme sole, has not been at. tended with very happy consequences upon the state of society, because it has produced a complicated relation, very different from the simple state of “man and wife,” as it existed at common law — one person joined together for “better or for worse” — and the English Reports are filled with more cases of divorce, and alimony, and crim. con. than, I trust, will ever be found in the reports of No.'th Carolina. So far, wives in North Carolina have set up no pretensions to be free traders, although an estate was settled for their separate use and maintenance, and they have never attempted to make a will, unless there was an express power.
*126 This .complicated system of implied powers and restraint is totally at variance with,the policy of our Country, and for that reason has been repudiated by our sister States, who have adopted, in its stead, the plain and simple idea, that the husband is disabled, but the wife is not enabled, except so far as the deed or will confers an .express power.
As the doctrine has been discussed at large, I think it proper to notice a distinction, which may be taken, between a right to sell for the purpose of maintenance, and a right to dispose by will or by gift. Under the countenance of a Court of Equity, and to guard against the improvidence of the husband, a fund may be set apart for the maintenance of the wife, contrary to the rule of the common law. Suppose such a fund is set apart, and admit that in some cases (as in the case under consideration) it is necessary to sell, (or to charge by way of anticipation of the profits,) the current profits not being sufficient for the maintenance of the wife, and that, for this purpose, from the necessity of the case, a right to dispose of the life estate is implied, does this reason extend, so as to make an implication of the right to make a will 1 It is not necessary for her maintenance ; and the right to niake a will, if such was the intention, ought to have been expressly conferred. So there is a clear line of distinction between a right to sell, especially a life estate, which may be necessary to make the fund available, and the right to make a gift or to dispose of it by will, which, I believe, ought not to be implied, and should be conferred by express power.
Pee Con am. Bill dismissed with costs.